RIDLEY WATTS and Others, Respondents, *v.* THOMAS CARTER & SONS, INC., Appellant.

Second Department, January 11, 1924.

Sales — action to recover for anticipatory breach by defendant of alleged contract to purchase cotton cloth — sales made through broker and contract based on broker's sales notes — plaintiffs did not sign confirmation slips — plaintiffs refused to abide by sales notes unless defendant agreed to insert provision " f. o. b. mill or at mill in case of embargo "— defendant did not agree to that provision — contract was not made.

In an action to recover damages for an anticipatory breach of an alleged contract by the defendant to purchase cotton cloth, the existence of a contract is not shown, where it appears that the basis of the alleged contract is five broker's sales notes; that the defendant signed confirmation slips but the plaintiffs did not so sign; that thereafter the plaintiffs wrote the broker and also the defendant requesting that its form of sales note be signed and returned in order to complete

the sale; that the defendant refused to execute two sets of notes and the plaintiffs then insisted that the sales note contain the provision that the sale was " f. o. b. mill or at mill in case of embargo," but the defendant did not agree to this condition.

Plaintiffs' letter was not an unequivocal acceptance of the defendant's offer on the basis of the terms of the broker's sales notes actually executed, but was a rejection of that offer and a substitution of a new one.

APPEAL by the defendant, Thomas Carter & Sons, Inc., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 5th day of May, 1922, upon the verdict of a jury, and also from an order, entered in said clerk's office on the 31st day of May, 1922, denying the defendant's motion for a new trial made upon the minutes.

The action is brought to recover damages for anticipatory breach by the defendant of an alleged contract for the purchase of 250,000 yards of cotton cloth at twenty-five and one-half cents per yard. Its basis is five broker's sales notes, for 50,000 yards each, and each dated April 15, 1920. Duplicate notes and confirmation slips were on that date sent by the broker to both buyer and seller. Defendant's president signed the confirmation slips and returned them to the broker, who pasted them upon the backs of his copies of the notes. Plaintiffs did not sign the confirmation slips.

Plaintiffs on April 23, 1920, wrote the broker, requesting that their form of sales note be confirmed by defendant, and on April 27, 1920, wrote the defendant requesting that its form of sales note be confirmed and returned, in which, among other things, they said, " as we need this in order to complete the sale." On April 28, 1920, defendant wrote plaintiffs:

" In reply to your favor of the 27th inst., regarding contracts of April 15th, through the George Carter Co. No. 1362–1363–1364–1365–1366, for 39″ 68 /72 4.75 50,000 yards each carded lawn, Norris make, we *have already accepted and are sorry to note in your letter that the sale is not complete unless we accept other contracts made by the seller.* If this is the rule that you have made, we were not aware of same, and do not wish to accept two sale notes on any contract, and if the broker's contract is to be eliminated, we much prefer not to complete the sale.

" Kindly advise us immediately of your action in this matter.
                    " Yours very truly,
                              " THOMAS CARTER & SONS, INC."

To which on April 29, 1920, plaintiffs replied as follows:

" We have your letter of April 28th and find that there has been a misunderstanding on the part of Geo. Carter Co. with

42

regard to the sale-note covering the sale in question. We have been using our own form of sale-note exclusively, buyer retaining one copy signed by both parties as well as the brokers and ourselves each having one. Mr. Geo. Carter misunderstood our method and has issued his own sale-note which you have accepted and which, under the circumstances we shall accept. We agree with you that there is no reason for two sale-notes but believe ours is the better form, as it is more explicit.

"In talking to Mr. Geo. Carter about this to-day, we called his attention to the fact that his sale-note does not specify delivery 'at mill' and he requested that in our letter to you we cover this point. We have, *therefore made the sale-note read — 'f. o. b. mill or at mill in case of embargo,' all of which we trust is satisfactory to you.*

            "Yours very truly,

                    "WATTS, STEBBINS & CO."

It appears that at the time of the negotiations, the question of railroad embargoes had become a serious matter in this trade, and plaintiffs had adopted a practice of requiring their customers to sign their own form of sales note which provided, upon the subject of delivery, "f. o. b. mill or at mill in case of embargo, lack of shipping facilities or shipping instructions," although the broker's form of note contained no such provision. Under this clause the seller in case of embargo was not obliged to ship, but could complete the sale by storing at the mill and sending an invoice to the buyer who would be required to pay in ten days, but might not receive his goods for from three to four months.

*Allan R. Campbell* [*Herman Siefke, Jr.,* with him on the brief], for the appellant.

*Eugene W. Leake* [*Edward A. Craighill, Jr.,* with him on the brief], for the respondents.

RICH, J.:

The learned trial court has submitted to the jury the question as to whether or not the acceptance of the sales notes by both parties was complete on April 29, 1920, and has specifically charged that, prior to April 29, 1920, no contract existed, to which no exception was taken. Respondents seek to sustain their judgment upon the theory that the contract was valid and binding upon both parties on April 15, 1920, when the broker forwarded his sales notes to both parties and the negotiations after that date merely related to a modification. Appellant contends that this is contrary to the theory upon which the case was tried and sub-

mitted to the jury, and that as the complaint declares upon a written contract and the case was tried and submitted to the jury upon that theory, the question as to whether the paper writings constituted an offer and acceptance was one of law for the court and not one of fact for the jury (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310), and that as the letter of April 29, 1920, was not an unqualified acceptance of defendant's offer, no contract was established.

The precise question presented for decision by this appeal relates to whether or not the delivery of the confirmation slips to the broker on April 29, 1920, coupled with plaintiffs' letter, constituted an unqualified acceptance of the defendant's offer to go on with the sale on the basis of the terms set forth in the broker's notes. The law upon this subject is well settled. To establish a legal contract through the medium of correspondence, it must be made to appear that there was not only a plain, unequivocal offer, but that the acceptance of such an offer was equally plain and free from ambiguity. There must have been a meeting of the minds of the contracting parties in respect to every material detail of the contract, and if the precise thing offered was not accepted, or if the acceptance was in any manner qualified by conditions or reservations, no valid contract is made, but such a modified or qualified acceptance must be treated as a rejection of the offer. (*Mahar* v. *Compton*, 18 App. Div. 540; *Poel* v. *Brunswick-Balke-Collender Co., supra.*)

Tested by the rule, the paper writings in the case at bar do not present a valid contract. The defendant was not willing to buy for delivery at mill, the plaintiffs were so informed, but persisted in their letter of April 29, 1920, in attempting to insert such a provision in the contract. This was not an unequivocal acceptance of defendant's offer to go on with the contract on the basis of the terms of the broker's sales notes, but on the contrary must be treated as a rejection of the offer.

The judgment and order should be reversed upon the law and the facts, and a new trial granted, with costs to abide the event.

KELLY, P. J., MANNING, KELBY and YOUNG, JJ., concur.

Judgment and order reversed upon the law and the facts, and a new trial granted, costs to abide the event.